**In the Matter of Harold L. TRUXON, Virginia A. Truxon, Debtors.**

**Bankruptcy No. 86–44.**

United States Bankruptcy Court, D. Delaware.

Jan. 14, 1987.

James L. Patton, Jr., Wilmington, Del., for debtors.

Michael B. Joseph, Wilmington, Del., for Sussex Trust Co.

Thomas D. Runnels, Newark, Del., Trustee.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

Harold L. and Virginia A. Truxon are Chapter 13 debtors. They have proposed a five-year plan that purports a 100% payout to secured and unsecured creditors. Sussex Trust Company is the holder of an allowed secured claim in the amount of $45,137.96 based upon a *sci fa* judgment entered July 9, 1985 (proof of claim filed March 13, 1986). Sussex Trust Company has objected to confirmation contending that the provision relating to it does not satisfy the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii). That subsection requires that the value of property to be distributed under the plan be not less than the amount of the allowed secured claim.

The plan provides for Sussex Trust's claim as follows:

\* \* \* Mortgagee Sussex Trust Co. shall retain its existing lien on real estate of the debtors. The debtors shall make monthly payments to the Trustee for five years in an amount equal to the monthly interest upon the amount represented by mortgagee's judgment of foreclosure, which interest figure shall be the prevailing commercial credit market rates on the effective date of the plan, and at the time of the last payment the debtors

shall pay the entire outstanding balance of the judgment of foreclosure.

This provision is ambiguous. The preceding plan paragraph dealing with J. Kislak Co. who holds a mortgage against all of debtors' real estate specifically provides for payments to and disbursements by the Trustee to Kislak of the funds received over the life of the plan. This paragraph is devoid of any distribution provision. Assuming this to be an oversight and that it is debtors' intention that disbursement be made with regularity by the Trustee, there is a further problem. Sussex Trust's allowed claim consists of principal, interest, costs, fees and subsequent accrued interest. The proposal to pay the amount represented by the judgment of foreclosure does not comply with § 1325(a)(5)(B)(ii) in that it fails to provide for payment of the full amount of Sussex Trust's allowed claim.

 Sussex Trust points to *In re Corliss,* 43 B.R. 176 (Bank.D.Or.1984) in support of its position that periodic payments of principal as well as interest are required. The *Corliss* court does require ammortization of principal and interest during the term of the plan, but does not state any authority or rationale for its holding. This court concludes that if the payments proposed under the plan have provided for the full amount of the allowed secured claim, periodic payments of principal are not required. However, in light of § 1322(c) of title 11 which restricts the payout period of a plan to three years unless for cause the court approves a longer period, an interest only payment on a sum of the magnitude of Sussex Trust's claim over a period of five years is unreasonable.

 Even if the plan complied with § 1325(a)(5)(B)(ii), it does not appear that debtors would be able to make all payments under the plan as required by § 1325(a)(6). Debtors propose to pay $1,088.80 a month for October through April and $1,688.80 a month for May through September. They believe they will have no difficulty meeting this obligation since their financial difficulties began in 1984–85 from paying college related expenses for three children estimated at approximately $7,000 per year since 1980. They now have only one child in college whose expenses are covered by a full academic scholarship.

Debtors' income is from a restaurant operated by Old Virginia, Inc. a corporation owned by debtors and located on property of the debtors. They intend to increase the corporations' rental payment to match the amounts to be paid under the plan.

In reviewing the income statement of Old Virginia, Inc., it appears that the corporation has been paying $500 per month rental fee to the Truxons. The increased rent for the period January 1 through March 31 would increase the rental expenditure by $588.80 per month or $1,766.40 for the period. The income statement for the period states that the corporation's net income is $2,761.63 which appears adequate to absorb the increase in rental expense. The court notes, however, that the wages paid for the period are stated to be $1,500 or $500 per month. On the debtors' statements and schedules filed with the court, debtors estimate their joint monthly take-home income at a total of $828.92. It appears that this income is necessary to meet monthly living expenses. Thus, the wages to be paid by the corporation during the period would have to be increased by $328.92 per month or a total of $986.76 for the period. The increase in rental expense and wages paid for the period total $2,753.16. Given debtor's testimony that this was the best income for the same period ever, the court is concerned over debtors' ability to make their required payments under the plan through increased rent charges to their corporation. Further, the income statement also provides information for the seven-month period September 1985 through March 1986. The projected rent increases to the corporation for the seven-month period would total $4,721.60. (This figure includes increased rental for October to March at $588.80 per month and an increase of $1,188.80 for the month of September.) The amount of increased rent charges that the debtors expect to collect from Old Virginia exceeds the corporation's

net income of $4,499.15 for the seven-month period.

Further, the amended plan provides for a balloon payment in excess of $45,000 at the end of the plan. Debtors intend to obtain the funds needed for this lump sum payment by selling the restaurant property to Old Virginia. Mr. Truxon stated he had contacted Beneficial National Bank regarding refinancing and was informed that Beneficial might be interested in providing financing to Old Virginia in three to five years if the debtors had made timely payments under their plan.

In order to confirm debtors' plan, the court must be satisfied that they have the present and future ability to comply with its terms. Based on the income statement submitted by the debtors, the court concludes that there is insufficient income in Old Virginia to pay the rent increases necessary to fund the plan. This increases the uncertainty of their obtaining refinancing in order to make the balloon payment.

Debtors' proposed amended plan fails to meet the confirmation requirements of 11 U.S.C. § 1325(a)(5)(B)(ii) and (6); therefore, confirmation must be denied.